## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FIFTH THIRD BANK, NATIONAL ASSOCIATION, f/k/a Fifth Third Bank,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION** |
| **RECLEIM LLC, a Delaware limited liability company, RECLEIM NOVA, LLC, a Delaware limited liability company, RECLEIM LOGISTICS, LLC, a Delaware limited liability company, RECLEIM OH, LLC, a Delaware limited liability company, RECLEIM PA, LLC, a Delaware limited liability company, RECLEIM SC LLC, a Delaware limited liability company, PEACHTREE INVESTMENT SOLUTIONS, LLC, a Georgia limited liability company, JON STEPHEN BUSH, individually, and DWAYNE PETERSON DAVIS, individually,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **NO. _____** |
| **Defendants.** | ) | |

## COMPLAINT FOR BREACH OF PROMISSORY NOTES, GUARANTIES AND FOR APPOINTMENT OF A RECEIVER

## SUMMARY OF CASE

Recleim, LLC and its related companies, Recleim Nova, LLC, Recleim Logistics, LLC, Recleim OH, LLC, Recleim PA, LLC, and Recleim SC LLC, (each, a "**Borrower**" and collectively the "**Borrowers**" or the "**Company**") and Peachtree Investment Solutions, LLC, Jon Stephen Bush and Dwayne Peterson Davis (each, along with Recleim OH, LLC, Recleim PA, LLC, and Recleim SC LLC, a "**Guarantor**" and collectively, the "**Guarantors,**" and Borrowers and Guarantors, collectively, the "**Defendants**") provide appliance recycling, collection, transportation, and resource recovery services in North America with recycling facilities in Graniteville, South Carolina, Philadelphia, Pennsylvania, and Lima, Ohio.

Defendants are in default on approximately $13 million of indebtedness due and owing to their primary lender Fifth Third Bank, National Association, f/k/a Fifth Third Bank ("**Fifth Third**" or "**Plaintiff**"), the plaintiff in this action.  Fifth Third holds a first lien on substantially all of the Company's operating assets.  The Company is also in default on other financial obligations, including the failure to pay the lease obligations as and when due. The Declaration of Cynthia Clark (the "**Clark Declaration**"), being filed substantially cotemporaneous herewith,

authenticates and attaches many of the documents referred to herein and is incorporated herein by reference in its entirety as if fully set forth herein.

Fifth Third has given Borrowers more than ample opportunity to manage their operations but now seeks the appointment of a receiver to stave off further diminution in value and loss of the business as a going concern. Since December, 2019, Fifth Third has made concessions, granted Defendants financial accommodations and has otherwise agreed to forbear from exercising its rights and remedies under its loan documents with Defendants in order to provide Defendants with more than a year to restructure their business operations and pay their debts.

Fifth Third has now determined that the best path forward, for itself and the Company is to seek appointment of a receiver in order to keep the Company operating and to maximize the value of the collateral. This is also one of Fifth Third's express contractual remedies upon default. This relief permits the Company's operations to continue without interruption and provides a pathway for necessary cash infusions into the operations. Based on non-payment of rent when due, the Company has received default and eviction notices as to its Pennsylvania facility. Further, as a result of its financial distress, the Company has had insurance lapses and/or has otherwise failed to maintain appropriate insurance at all times. Numerous other creditors and third-parties have also obtained or are in

the process of obtaining substantial judgments by default against the Company. The Company is generally not even appearing, let alone defending, these lawsuits.[1]

The current owners are unable and/or unwilling to make the necessary cash infusions to adequately fund the Company as a going concern. As such, time is of the essence. Given the current management and defaults, Fifth Third is currently unwilling to advance funds to the Company, but would be willing to advance funds to a court-appointed receiver managing the operations.

Accordingly, Fifth Third seeks the appointment of Sandeep Gupta, Managing Partner of Novo Advisers as receiver over the Company's property, all or substantially all of which is Fifth Third's Collateral, pursuant to the terms set forth in the proposed order attached to the Motion for Appointment of Receiver filed substantially contemporaneously herewith.

## INTRODUCTION

Plaintiff, Fifth Third, by and through its undersigned counsel, brings this complaint seeking the payment of contractual debt and for the appointment of a

---

[1] A judgment and lien search reveals that as of January 7, 2021, there have been at least two default judgments entered against Recleim, LLC and Recleim, Nova, LLC, as well as seven pending litigation matters against Recleim, LLC and its related companies. In addition, on January 2, 2021, a class action lawsuit was filed in the Northern District of Georgia against guarantors Peachtree Investment Solutions, LLC, Jon Stephen Bush and Dwayne Peterson Davis. *See* Case No. 2021-cv-00002.

receiver (this "**Complaint**") against Defendants.  As support for this Complaint, together with Fifth Third's *Submission of Documentary Evidence* ("**Evidentiary Submission**"), filed substantially contemporaneously herewith, Fifth Third states as follows:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.    Plaintiff Fifth Third is a national banking association that has its principal place of business in Cincinnati, Ohio.

2.    Defendant Recleim, LLC ("**Recleim**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.   To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim's membership consists of the following:[2]

   (a)    ETIG, LLC:  a limited liability company organized under the laws of the State of Delaware.   To the best of Plaintiff's and undersigned

---

[2] Despite a review of the information available to Fifth Third in its files as well as the public information available, Fifth Third was unable to ascertain the members and citizenships of every member of Recleim, LLC.  However, none of the available information indicated that the members were citizens of Ohio.  Thus, Plaintiff alleges diversity jurisdiction on this basis. *See, e,g*., *Lincoln Ben. Life Co., v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015).

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that ETIG, LLC's membership consists of Peachtree Investment Solutions, LLC a limited liability company organized under the laws of the State of Georgia. To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Peachtree Investment Solutions, LLC's membership consists of Dwayne Peterson Davis, an individual and citizen of Georgia and Jon Stephen Bush, an individual and citizen of Georgia.

(b)     Peachtree Investment Solutions, LLC:  a limited liability company organized under the laws of the State of Georgia.  To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Peachtree Investment Solutions, LLC's membership consists of Dwayne Peterson Davis, an individual and citizen of Georgia, and Jon Stephen Bush, an individual and citizen of Georgia.

(c)     SC Launch, Inc.:  a corporation organized under the laws of the State of South Carolina with its principal place of business in Columbia, South Carolina.

(d)     Emerald Acquisitions 2015, LLC:  a limited liability company organized under the laws of the State of Georgia.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Emerald Acquisitions 2015, LLC is a citizen of Ohio or a non-citizen.

(e)     Spring Creek Capital, LLC:  a limited liability company organized under the laws of the State of Delaware.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Spring Creek Capital, LLC is a citizen of Ohio or a non-citizen.

(f)     Invite Investments II, LLC:  a limited liability company organized under the laws of the State of Texas.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support

indicates that no member of Invite Investments II, LLC is a citizen of Ohio or a non-citizen.

(g)     Alba Ventures, LLC:  a limited liability company organized under the laws of the State of Delaware.   To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Alba Ventures, LLC is a citizen of Ohio or a non-citizen.

(h)     Regional Capital Investments, LLC: a limited liability company organized under the laws of the State of Georgia.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Regional Capital Investments, LLC is a citizen of Ohio or a non-citizen.

(i)     Jaybird Investments, LLC: a limited liability company organized under the laws of the State of Georgia.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support

indicates that no member of Jaybird Investments, LLC is a citizen of Ohio or a non-citizen.

(j)    Spring Ventures 1, LLC:  a limited liability company organized under the laws of the State of South Carolina. To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Spring Ventures 1, LLC is a citizen of Ohio or a non-citizen.

(k)    Harmony Analytics, LLC: a limited liability company organized under the laws of the State of a Delaware.  To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Harmony Analytics, LLC is a citizen of Ohio or a non-citizen.

(l)    John G. Alston, Sr.:  an individual and citizen of the State of Georgia.

(m)    John Goddard Alston, Jr.:  an individual and citizen of the State of Georgia.

(n)    Adam G. Kauffman:  an individual and citizen of the State of Georgia.

(o)    Gary A. Kauffman:  an individual and citizen of the State of Florida.

(p)    Daniel T. McFarland:   an individual and citizen of the State of Georgia.

(q)    Haresh T. Tharoni:  an individual and citizen of the State of Florida.

(r)    Brad Dehond:  an individual and citizen of the State of Illinois.

(s)    Edith McDonnell:   an individual and citizen of the State of North Carolina.

(t)    Jennifer Alston Euart:   an individual and citizen of the State of Georgia.

(u)    Steve Roy:  an individual and citizen of the State of Alabama.

3.    Defendant Recleim Nova, LLC ("**Recleim Nova**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.  To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim Nova's sole member is Recleim, LLC. As set forth in paragraph 2 above, to the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Recleim, LLC is a citizen of Ohio or a non-citizen.

4.      Defendant Recleim Logistics, LLC ("**Recleim Logistics**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in business in Atlanta, Georgia.   To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim Logistics' sole member is Recleim, LLC. As set forth in paragraph 2 above, to the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Recleim, LLC is a citizen of Ohio or a non-citizen.

5.      Defendant Recleim OH, LLC ("**Recleim OH**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in business in Atlanta, Georgia.   To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim OH's sole member is Recleim, LLC. As set forth in paragraph 2 above, to the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Recleim, LLC is a citizen of Ohio or a non-citizen.

6.      Defendant Recleim PA, LLC ("**Recleim PA**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.  To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim PA's sole member is Recleim, LLC. As set forth in paragraph 2 above, to the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of Recleim, LLC is a citizen of Ohio or a non-citizen.

7.      Defendant Recleim SC LLC ("**Recleim SC**") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.  To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Recleim SC's membership consists of the following:

(a)      Recleim, LLC:  as set forth in paragraph 2 above, to the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the

evidentiary support indicates that no member of Recleim, LLC is a citizen of Ohio or a non-citizen.

(b)  G&R Initiatives, LLC:  a limited liability company organized under the laws of the State of Georgia. To the best of Plaintiff's and undersigned's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that no member of G&R Initiatives, LLC is a citizen of Ohio or a non-citizen.

8.    Defendant Peachtree Investment Solutions, LLC ("**Peachtree Investment**") is a limited liability company organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.  To the best of Plaintiff's and undersigned knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the evidentiary support indicates that Peachtree Investments members consists of Dwayne Peterson Davis, an individual and citizen of Georgia and Jon Stephen Bush, an individual and citizen of Georgia.

9.    Defendant Jon Stephen Bush ("**Bush**") is an individual and citizen of the State of Georgia.

10.   Defendant Dwayne Peterson Davis ("**Davis**") is an individual and citizen of Georgia is an individual and citizen of the State of Georgia.

11.   The amount in controversy, exclusive of interest and costs, between Fifth Third and each of the Defendants exceeds $75,000.

12.   This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332.

13.   Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### I.   THE COMPANY'S BUSINESS OPERATIONS

14.   The Company provides appliance recycling, collection, transportation, and resource recovery services in North America. It recycles commodity components in the appliances; isolates and destroys onsite refrigerants and greenhouse gases; and de-manufactures refrigerators, freezers, air-conditioning units, dehumidifiers, vending machines, HVAC systems, and other household appliances and related electronics. The company also offers reverse logistics, trucking, real time tracking, delivery, and utility program services. In addition, it provides transportation of appliances from households and retailers to collection and consolidation sites; and from there to recycling plant locations.

15.   The Company's services include closed-loop and small pellet recycling; re-using materials; filling out legal paperwork; handling and conversion

of ozone-depleting substances; disposing hazardous chemicals; recovering plastics, aluminum, copper, steel, and pelletized foam; and recovering and reclaiming refrigerants and foam-blowing agents. It serves households, original equipment manufacturers, and retailers.

16.   The Company was incorporated in 2011 and is based in Atlanta, Georgia with its headquarters located at 34 Old Ivy Rd, Suite 200, Atlanta, GA 30342. It also operates additional recycling facilities in Graniteville, South Carolina; Philadelphia, Pennsylvania[3] and Lima, Ohio.

17.   Its principals are Defendants Jon Stephen Bush and Dwayne Peterson Davis, who reside and work in the Atlanta metropolitan area.

## II. THE COMPANY'S FINANCIAL DISTRESS

18.   The Company began its banking relationship with Fifth Third in 2018, and since 2019 has been in substantial financial and covenant default to Fifth Third.   The Company has not made a regularly scheduled payment to Fifth Third since December, 2019.   As shown below, the Company's finances have recently worsened.

---

[3] Upon information and belief, the landlord for the property located in Philadelphia, Pennsylvania, Delaware Avenue, LLC, has evicted Recleim PA, LLC from that facility.   *See* (i) Case No. LT-20-2-19-5300 Philadelphia Municipal Court, First Judicial District of Pennsylvania, and (ii) Case No. LT-20-2-19-5301 Philadelphia Municipal Court, First Judicial District of Pennsylvania.

19.   With regard to its assets, the Company has made few attempts to monetize its assets, has failed to make payment of rent when due, and otherwise allowed its insurance to lapse.

20.   The Company has made a series of bad business decisions.  Its major problem is that it makes investments into failing operations, throwing good money at bad situations. It is unwilling or unable to make the necessary changes to operate as a profitable business. This continuous failure has immediate consequences.

21.   During the Company's fiscal year 2019 and most of 2020, Fifth Third waited while the Company was supposed to implement various cost saving and revenue growing projects.  Despite giving the Company this time, the Company failed to successfully execute on these opportunities.

22.   Based upon information available to Fifth Third provided by the Company, the Company has in excess of $6,400,000.00 in net operating losses in 2019 and $10,600,000.00 in net operating losses in 2020.

23.   Based upon information available to Fifth Third provided by the Company, the Company failed to timely file and otherwise pay payrolls taxes in 2020 in an amount in excess of $770,000.00.

## III. THE COMPANY'S FINANCIAL OBLIGATIONS TO FIFTH THIRD

### A.   Summary of Indebtedness

24.   Fifth Third began its financial relationship with the Company in 2018. Fifth Third has perfected security interest in almost all of the Company's assets as described in further detail below.  In connection with this financial relationship, from time to time, Fifth Third has made certain revolving and term loans to Borrowers (collectively, the "**Loans**"), as further described below.

25.   Recleim is indebted to Fifth Third Bank on a revolving loan in the maximum principal amount of $5,000,000.00 as evidenced by that certain Loan Agreement in favor of Fifth Third Bank, as amended by that certain First Loan Modification Agreement dated April 29, 2019 (the "**Revolving Loan Agreement**").

26.   The Borrowers are also indebted to Fifth Third Bank pursuant to several term loans, as follows: a term loan, as amended, modified, restated or supplemented, in the maximum principal amount of $1,210,377.29 executed on or about December 19, 2018 (the "**First December 19 Term Loan**"); a term loan, as amended, modified, restated or supplemented, in the maximum principal amount of $2,644,067.29 executed on or about December 19, 2018 (the "**Second December 19 Term Loan**"); and a term loan, as amended, modified, restated or

supplemented, in the maximum principal amount of $6,347,824.00 executed on or about December 19, 2018 (the "**Third December 19 Term Loan**").

B.    <u>**The Revolving Loan**</u>

27.    On or about December 20, 2018, Recleim executed and delivered the Revolving Loan Agreement in the maximum principal amount of $5,000,000.00, as amended by that certain First Loan Modification Agreement dated April 29, 2019. *Evidentiary Submission*, Exs. 1 and 2.

28.    To evidence the Revolving Loan Agreement, on or about December 20, 2018, Recleim executed that certain Revolving Note payable by Recleim to the order of Fifth Third in the maximum principal amount of $5,000,000 (the "**Revolving Note**"). *Evidentiary Submission*, Ex. 3.

29.    The Revolving Note is secured by that certain Security Agreement dated December 20, 2018 (with any and all amendments or modifications, hereinafter referred to as the **"Revolving Security Agreement,"** and together with the Revolving Loan Agreement and Revolving Note, collectively, the "**Revolving Loan Documents**") which grants Lender a first position security interest and lien to all of Recleim's accounts, inventory, equipment, general intangibles, investment property, instruments, chattel paper, electronic chattel paper, documents, securities, moneys, cash, letters of credit, letter of credit rights,

promissory notes, warrants, dividends, distributions, contracts, agreements, contract rights, all assets and personal property, fixtures, goods, farm products, supporting obligations, software, commercial tort claims, minerals, standing timber, and growing crops together with all proceeds and product thereof (as more particularly described in the Security Agreement, the **"December Personal Property Collateral"**). *Evidentiary Submission*, Ex. 4.

**C.**    **The Term Loans**

30.    On or about May 3, 2018, Recleim, Recleim Nova, and Recleim Logistics executed and delivered that certain Master Loan and Security Agreement, which governs the Term Notes, defined and discussed below (the "**Master Loan Agreement**"). *Evidentiary Submission*, Ex. 5.

31.    The First December 19 Term Loan is evidenced by that certain Promissory Note dated December 19, 2018 payable by Recleim and Recleim OH to the order of Fifth Third in the maximum principal amount of $1,210,377.29 (the "**First December 19 Note**"). *Evidentiary Submission*, Ex. 6.

32.    The Second December 19 Term Loan is evidenced by that certain Promissory Note dated December 19, 2018 payable by Recleim and Recleim PA to the order of Fifth Third in the maximum principal amount of $2,644,067.29 (the "**Second December 19 Note**"). *Evidentiary Submission*, Ex. 7.

33.   The Third December 19 Term Loan is evidenced by that certain Promissory Note dated December 19, 2018 payable by Recleim and Recleim SC to the order of Fifth Third in the maximum principal amount of $6,347,824.00 (the "**Third December 19 Note**" and together with the First December 19 Note and the Second December 19 Note, collectively, the "**Term Notes**" and together with Revolving Note, the "**Notes**").  *Evidentiary Submission*, Ex. 8.

34.   The Term Notes are secured by the Master Security Agreement (the "**Master Security Agreement**" together with Revolving Security Agreement, the "**Security Agreements**") which grants Lender a first position security interest and lien in and to all of Borrowers' equipment (including without limitation, all inventory, equipment, fixtures, or other property comprising the same), and general intangibles relating thereto; any and all Rate Management Obligations; all subleases, chattel paper, accounts, security deposits and bills of sale relating thereto; any and all substitutions, replacements or exchanges for any such Equipment or other collateral; and any other property or assets in which Borrower may have in the past or shall have in the future granted a security interest (as more particularly described in the Master Loan and Security Agreement, the "**May Personal Property Collateral**" and together with the December Personal Property Collateral, the "**Collateral**").

35.    The Term Notes and the Master Loan Agreement are hereinafter referred to as the "**Term Loan Documents**").

## D.    **The Guaranties**

36.    The Notes are jointly and severally guaranteed by that certain Continuing Guaranty Agreement dated December 20, 2018 executed by Recleim SC (the "**Recleim SC Guaranty**"), that certain Continuing Guaranty Agreement dated December 20, 2018 executed by Recleim PA (the "**Recleim PA Guaranty**"), and that certain Continuing Guaranty Agreement dated December 20, 2018 executed by Recleim OH (the "**Recleim PA Guaranty,**" together with the Recleim SC Guaranty and the Recleim PA Guaranty, collectively, the "**December 20, 2018 Guaranty Agreements**"). *Evidentiary Submission*, Exs. 9-11.

37.    Pursuant to the December 20, 2018 Guaranty Agreements, each of Recleim PA, Recleim OH and Recleim SC unconditionally, absolutely, and irrevocably guaranteed the obligations of Recleim to Fifth Third.

38.    The Notes are further jointly and severally guaranteed by that certain Continuing Guaranty Agreement dated May 3, 2018 executed by Peachtree Investment (the "**Peachtree Investment Guaranty**"), that certain Continuing Guaranty Agreement dated May 3, 2018 executed by Davis (the "**Davis**

Guaranty"), and that certain Continuing Guaranty Agreement dated May 3, 2018 executed by Bush (the "**Bush Guaranty**" and together, collectively, the "**May 3 2018 Guaranty Agreements,**" together with the December 20, 2018 Guaranty Agreements, the "**Guaranty Agreements**"). *Evidentiary Submission*, Exs. 12-14.

39.   Pursuant to the May 3, 2018 Guaranty Agreements, Peachtree Investment, Davis and Bush unconditionally, absolutely, and irrevocably guaranteed the obligations of Recleim, Recleim Nova, and Recleim Logistics to Fifth Third Bank.

**E.**   **UCC Filings**

40.   Appropriate financing statements covering and perfecting Fifth Third's security interest and lien in and to the personal property collateral are also filed with the various filing offices (the "**UCC Financing Statements**"). *Evidentiary Submission*, Ex 15.

**F.**   **Default and Forbearances**

41.   On September 17, 2019, Fifth Third sent Defendants that certain Notice of Default, Acceleration and Demand for Repayment of Indebtedness, and Intent to Collect Attorney's Fees Pursuant to O.C.G.A. § 13-1-11, declaring Defendants in default under the Loan Documents, as a result of, among other existing events of default, Defendant's failure to comply with reporting

requirements and failure to comply with financial covenants, all as required under the Loan Documents. *Evidentiary Submission*, Ex. 16.

 42. On or about December 30, 2019, Defendants and Fifth Third entered into that certain Forbearance Agreement, under which Defendants agreed that the Notes are cross-defaulted, cross-guaranteed, and cross-collateralized and whereby they acknowledged that they were in default with respect to the Loan Documents (the "**December 2019 Forbearance Agreement**").  Pursuant to the December 2019 Forbearance Agreement, Fifth Third agreed to forbear temporarily from exercising its rights and remedies under the Loan Documents, with respect to certain specified defaults during a time period that would end no later than March 31, 2020 (the "**December 2019 Forbearance Termination Date**"). *Evidentiary Submission*, Ex. 17.

 43. Defendants defaulted under the terms of the December 2019 Forbearance Agreement.

 44. On February 18, 2020, Fifth Third sent Defendants that certain Notice of Forbearance Termination Events letter pursuant to which Fifth Third notified Defendants that a Forbearance Termination Event occurred and existed under the December 2019 Forbearance Agreement, due to, *inter alia*, their failure to make payments as and when due and by virtue of their failure to perform other non-

monetary obligations owed to Fifth Third under the December 2019 Forbearance Agreement. *Evidentiary Submission*, Ex. 18.

45.    On or about March 31, 2020, the December 2019 Forbearance Agreement was amended and modified by that certain First Amendment to Forbearance Agreement (the "**March 2020 Forbearance Agreement**", and together with the December 2019 Forbearance agreement, the "**Forbearance Agreement**").   Again, Defendants acknowledged that they were then in default with respect to the Loan Documents and Fifth Third agreed to forbear temporarily from exercising its rights and remedies under the Loan Documents, with respect to certain specified defaults during a time period that would end no later than July 31, 2020 (the "**March 2020 Forbearance Termination Date**").   *Evidentiary Submission*, Ex. 19.

46.    The Forbearance Agreement along with the Guaranty Agreements, Revolving Loan Documents, and Term Loan Documents are referred to herein as the "**Loan Documents**".

47.    Defendants defaulted under the terms of the March 2020 Forbearance Agreement.

48.    On April 23, 2020, Fifth Third sent Defendants that certain Notice of Forbearance Termination Event and Reservation of Rights letter pursuant to which

Case 1:21-cv-00245-SCJ   Document 1   Filed 01/14/21   Page 25 of 47

Fifth Third notified Defendants that a Forbearance Termination Event occurred and existed under the Forbearance Agreement, due to, *inter alia*, their failure to again make payments as and when due and their continued failure to perform other non-monetary obligations owed to Fifth Third under the Forbearance Agreement (the "**April 23 Notice of Default**").  *Evidentiary Submission*, Ex. 20.

49.   Despite the April 23 Notice of Default and Fifth Third's demands, Defendants failed to cure the defaults under the Forbearance Agreement and Loan Documents.

50.   On May 5, 2020, Fifth Third sent Defendants that certain Notice of Default, Acceleration and Demand for Repayment of Indebtedness, and Intent to Collect Attorney's Fees Pursuant to O.C.G.A. § 13-1-11, again notifying Defendants that a Forbearance Termination Event occurred and existed under the Forbearance Agreement, due to, *inter alia*, Defendants' failure to perform all of its obligations owed to Fifth Third under the Forbearance Agreement and Loan Documents and demanding payment in full of all amounts owing under the Notes (the "**May 5 Notice of Default**").  *Evidentiary Submission*, Ex. 21.

51.   Despite the May 5 Notice of Default, Defendants failed to cure the defaults under the Loan Documents or otherwise pay the amounts due and owing under the Notes.

52.   On July 20, 2020, Fifth Third sent Defendants that certain Notice of Forbearance Termination Event, Acceleration and Demand for Repayment of Indebtedness, and Intent to Collect Attorneys' Fees letter, pursuant to which Fifth Third again notified Defendants that a Forbearance Termination Event occurred and existed under the Forbearance Agreement, due to, *inter alia*, Defendants' failure to perform all of their obligations owed to Fifth Third under the Forbearance Agreement, including, *without limitation,* the failure to pay timely all amounts due and owing under the Forbearance Agreement (each a Forbearance Termination Event)(the "**July 20 Notice of Default**").   *Evidentiary Submission*, Ex. 22.

53.   Specifically, as set forth in the July 20 Notice of Default, Defendants had not, among other things, made (i) the June, 2020 payment of accrued and unpaid interest due under the Revolving Note, (ii) the July 15, 2020 payment of accrued and unpaid interest due under the Revolving Note, (iii) the June, 2020 payment of accrued and unpaid interest due under the Term Notes. Further, Defendants were also in default under the Forbearance Agreement and Loan Documents by virtue of their failure to perform various non-monetary obligations owed to Lender under the Forbearance Agreement.

54.    Despite the July 20 Notice of Default, Defendants failed to cure the defaults under the Loan Documents or otherwise pay the amounts due and owing under the Notes.

55.    This was the last Forbearance Agreement amendment between the parties.    The parties continued to negotiate other agreements, but these negotiations were unsuccessful.

56.    By August, 2020, Fifth Third determined that it was necessary for an outside, third-party Chief Restructuring Officer ("**CRO**") to evaluate the Company's current business model, financials, and profitability as well as operate the Company efficiently in order to determine the best avenue for repayment of the Loans in full to Fifth Third.

57.    By letter dated August 7, 2020, Fifth Third demanded that Defendants delegate, effective no later than August 14, 2020 and on a going-forward basis, sole and exclusive management, control, and decision-making authority for and on behalf of the Company to a CRO.  *Evidentiary Submission*, Ex. 23.

58.    Due to an unwillingness to cede control to a CRO, on or about August 27, 2020, Michael Fuqua, Sr. Managing Director of GlassRatner, a B. Riley Financial Company, was engaged to act as financial advisor to the Company. During Mr. Fuqua's engagement, the Company has never provided the control and

authority to him to act as a CRO in order to allow him to manage and direct the Company's business affairs, and to otherwise engage in the restructuring of debt or the sale of the Company, as would be necessary in this situation.

59.    The Defendants thus remain in continuing and substantial default in several regards with respect to the Loan Documents.  First, Defendants have failed to pay the amounts owing under the Loan Documents when due.  Second, Defendants have failed to comply with their reporting requirements under Loan Documents.  Third, Defendants have failed to honor their financial covenants under the Loan Documents.  All of these failures constitute events of default, as defined in the Loan Documents (the "**Defaults**").

60.    The Defaults are continuing and have not been cured by Defendants.

61.    As stated above, the Loans are cross-defaulted.  Accordingly, each of the above-referenced Defaults constitutes an event of default under the other Loan Documents.

62.    The amount outstanding under the Revolving Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, is not less than $4,946,941.16, consisting of principal in the amount of $4,710,247.31 plus accrued and outstanding interest in the amount of $185,334.55, plus late fees in the amount of $1,359.30, plus other fees in the

amount of $50,000.   Interest accrues daily at the default rate provided in the Loan Documents.  Attorneys' fees and other costs of collection also continue to accrue.

63.   The amount outstanding under the First December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, is not less than $1,175,938.93, consisting of principal in the amount of $1,068,364.58 plus accrued and outstanding interest in the amount of $53,354.13, plus late fees in the amount of $54,220.22.  Interest accrues daily at the default rate provided in the Loan Documents.  Attorneys' fees and other costs of collection also continue to accrue.

64.   The amount outstanding under the Second December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, is not less than $2,744,584.66, consisting of principal in the amount of $2,335,592.83, plus accrued and outstanding interest in the amount of $116,639.50, plus late fees in the amount of $292,352.33.   Interest accrues daily at the default rate provided in the Loan Documents.  Attorneys' fees and other costs of collection also continue to accrue.

65.   The amount outstanding under the Third December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, is not less than $5,995,247.05, consisting of principal in the amount

of $5,598,860.32 plus accrued and outstanding interest in the amount of $279,607.09, plus late fees in the amount of $116,779.64.   Interest accrues daily at the default rate provided in the Loan Documents.  Attorneys' fees and other costs of collection also continue to accrue.

66.   The principal amounts due, the unpaid interest, attorneys' fees and costs of collection are hereinafter collectively referred to as the "**Outstanding Indebtedness**."

## IV. <u>FIFTH THIRD'S REMEDIES UNDER THE LOAN DOCUMENTS</u>

67.   Fifth Third and its attorneys have had numerous conversations and communications with Defendants and their attorneys in an attempt to resolve their differences.  The Company made it clear during these discussions that, despite the maturity of the various loans and Fifth Third's requests for payment, they are presently unwilling to pay the Outstanding Indebtedness.  Those discussions have not resulted in an agreement.

68.   The Defaults entitle Fifth Third to exercise other rights and remedies under the Loan Documents, including the right to the appointment of a receiver.

69.   Under the Revolver Loan Agreement, Recleim expressly and unequivocally agreed to the appointment of a receiver upon default, without prior notice.  Section 7.2 of the Revolving Loan Agreement provides that:

<u>Remedies upon Default.</u> Upon the occurrence of any Event of Default, Lender shall take such action or actions as Lender may direct, at Lender's option and in its absolute discretion, including, but not limited to, any or all of the following actions:

….

(c) In its own right or by a court-appointed receiver, take possession of the Collateral . . .

*Evidentiary Submission*, Ex. 1.

70.   As stated above, Defendants are in substantial and continuing payment and covenant default to Fifth Third for the Outstanding Indebtedness.

## V. <u>THE NEED FOR A RECEIVER</u>

71.   Fifth Third has the right under the Loan Documents and applicable law to take possession of the Collateral (all assets of the Company) and effectively cease the Company's operations.  However, Fifth Third prefers not to take this self-help action because it would eliminate the going concern value of the Company, which would result in a diminution in the value of Fifth Third's Collateral.

72.   Moreover, the Company's operations would likely have already been closed and its cash flow extinguished, but for Fifth Third's repeated cooperation and forbearances over the past year.

73.   Fifth Third wants the recycling facilities to continue to operate to allow the debt to Fifth Third to be repaid.  At present, the Company's financial condition is unstable and untenable.

74.   It is apparent that the Collateral (which is essentially all of the assets of the Company) have been mismanaged, resulting in injury to, and waste of, the Collateral.  In order for the Collateral to remain viable and sustain its value, a receiver is necessary to manage the facilities, which utilize the Collateral. Additionally, a receiver is needed to market the Collateral for a potential sale or sales to maximize the value of the Collateral as a going concern.  Without a receiver to oversee the Collateral, the Company's financial inability to fulfill its responsibilities will continue to negatively impact the viability of the value of the Collateral to the detriment of Fifth Third and others.  The full extent of the problems will likely not be discovered until the receiver is granted full access to the Collateral.

75.   Without a receiver to manage the Collateral, Fifth Third will continue to suffer substantial damages as the Collateral will decline in value.

76.   The Collateral has earnings potential, but a receiver is necessary to stop the further deterioration of the value of the Collateral and to turn around the Company's financial condition.

77.   The highest and best value of the Collateral appears to be as a going concern.

78.   Defendants are and remain unable to cure the substantial and continuing Defaults to Fifth Third and others.

79.   Accordingly, it is imperative that the receiver have authority and control of all of the aspects of the Collateral in order to fully preserve the going concern value of the Company and the Collateral, and Fifth Third's rights under the Loan Documents.

## COUNT ONE:  BREACH OF PROMISSORY NOTE
## REVOLVING NOTE
## (AGAINST RECLEIM, LLC)

80.   Fifth Third incorporates and realleges the preceding paragraphs as if fully set forth herein.

81.   Recleim is in default on its obligations to Fifth Third to pay in full all amounts due and owing under the Revolving Note, including interest, attorneys' fees and costs, and all other charges thereunder.

82.   Recleim has further failed to comply with certain financial covenants as required under the terms of the Loan Documents.

83.   Recleim is liable to Fifth Third under the Revolving Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs

of this action, in an amount not less than $4,946,941.16, consisting of principal in the amount of $4,710,247.31 plus accrued and outstanding interest in the amount of $185,334.55, plus late fees in the amount of $1,359.30, plus other fees in the amount of $50,000, with additional interest to accrue daily at the default rate provided in the Revolving Note until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim for the outstanding indebtedness owing under the Revolving Note and costs, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## COUNT TWO: BREACH OF BREACH OF PROMISSORY NOTE
### FIRST DECEMBER 19 NOTE
### (AGAINST RECLEIM, LLC AND RECLEIM OH, LLC)

84.   Fifth Third incorporates and realleges the preceding paragraphs as if fully set forth herein.

85.   Recleim and Recleim OH are in default on their obligations to Fifth Third to pay in full all amounts due and owing under the December 19 Note, including interest, attorneys' fees and costs, and all other charges thereunder.

86.   Recleim and Recleim OH have further failed to comply with certain financial covenants as required under the terms of the Loan Documents.

87.   Recleim and Recleim OH are liable to Fifth Third under the First December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, is an amount not less than $1,175,938.93, consisting of principal in the amount of $1,068,364.58 plus accrued and outstanding interest in the amount of $53,354.13, plus late fees in the amount of $54,220.22, plus additional interest to accrue daily at the default rate provided in the First December 19 Note until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim and Recleim OH for the outstanding indebtedness owing under the First December 19 Note and costs, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action

### COUNT THREE:  BREACH OF PROMISSORY NOTE
### SECOND DECEMBER 19 NOTE
### (AGAINST RECLEIM, LLC AND RECLEIM PA, LLC)

88.   Fifth Third incorporates and realleges the preceding paragraphs as if fully set forth herein.

89.   Recleim and Recleim PA are in default on their obligations to Fifth Third to pay in full all amounts due and owing under the Second December 19

Note, including interest, attorneys' fees and costs, and all other charges thereunder.

90.    Recleim and Recleim PA have further failed to comply with certain financial covenants as required under the terms of the Loan Documents.

91.    Recleim and Recleim PA are liable to Fifth Third under the Second December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, in an amount not less than $2,744,584.66, consisting of principal in the amount of $2,335,592.83 plus accrued and outstanding interest in the amount of $116,639.50, plus late fees in the amount of $292,352.33, plus additional interest to accrue daily at the default rate provided in the Second December 19 Note, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim and Recleim PA for the outstanding indebtedness owing under the Second December 19 Note and costs, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action

## COUNT FOUR: BREACH OF PROMISSORY NOTE
### THIRD DECEMBER 19 NOTE
### (AGAINST RECLEIM, LLC AND RECLEIM SC LLC)

92.   Fifth Third incorporates and realleges the preceding paragraphs as if fully set forth herein.

93.   Recleim and Recleim SC are in default on their obligations to Fifth Third to pay in full all amounts due and owing under the Third December 19 Note, including interest, attorneys' fees and costs, and all other charges thereunder.

94.   Recleim and Recleim SC have further failed to comply with certain financial covenants as required under the terms of the Loan Documents.

95.   Recleim and Recleim SC are liable to Fifth Third under the Third December 19 Note as of January 7, 2021, exclusive of expenses of collection, attorneys' fees, and the costs of this action, in an amount not less than $5,995,247.05, consisting of principal in the amount of $5,598,860.32 plus accrued and outstanding interest in the amount of $279,607.09, plus late fees in the amount of $116,779.64, plus additional interest to accrue daily at the default rate provided in the Third December 19 Note, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim and Recleim SC for the outstanding indebtedness owing under the Third December 19

Note and costs, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action

**COUNT FIVE: BREACH OF GUARANTY**
**PEACHTREE INVESTMENT GUARANTY**
**(AGAINST PEACHTREE INVESTMENT SOLUTIONS, LLC)**

96.     Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

97.    Peachtree Investment is in default under the Peachtree Investment Guaranty by virtue of its failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

98.    Peachtree Investment is liable to Fifth Third for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Peachtree Investment for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## <u>COUNT SIX: BREACH OF GUARANTY</u>
### BUSH GUARANTY
### (AGAINST JON STEPHEN BUSH)

99.   Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

100.  Bush is in default under the Bush Guaranty by virtue of his failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

101. Bush is liable to Fifth Third under the Bush Guaranty for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Bush for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action

## <u>COUNT SEVEN:  BREACH OF GUARANTY</u>
### DAVIS GUARANTY
### (AGAINST DWAYNE PETERSON DAVIS)

102.  Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

103. Davis is in default under the Davis Guaranty by virtue of his failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

104. Davis is liable to Fifth Third under the Davis Guaranty for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Davis for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## COUNT EIGHT:  BREACH OF GUARANTY
### RECLEIM OH GUARANTY
### (AGAINST RECLEIM OH, LLC)

105. Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

106. Recleim OH is in default under the Recleim OH Guaranty by virtue of its failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

107.  Recleim OH is liable to Fifth Third under the Recleim OH Guaranty for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim OH for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## COUNT NINE:  BREACH OF GUARANTY
### RECLEIM PA GUARANTY
### (AGAINST RECLEIM PA, LLC)

108.  Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

109.  Recleim PA is in default under the Recleim PA Guaranty by virtue of its failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

110.  Recleim PA is liable to Fifth Third under the Recleim PA Guaranty for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim PA for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

**COUNT TEN:  BREACH OF GUARANTY**
**RECLEIM SC GUARANTY**
**(AGAINST RECLEIM SC LLC)**

111.  Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

112.  Recleim SC is in default under the Recleim SC Guaranty by virtue of its failure to perform all of its obligations owed to Fifth Third, including, without limitation, the failure to pay all amounts owing under the Notes as and when due.

113.  Recleim SC is liable to Fifth Third under the Recleim SC Guaranty for the Outstanding Indebtedness, with additional interest to accrue at the default rate set forth in the Notes until the date of judgment, and statutory attorneys' fees, pursuant to O.C.G.A. § 13-1-11.

**WHEREFORE,** Fifth Third demands judgment against Recleim SC for the Outstanding Indebtedness owing under the Notes, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## COUNT ELEVEN: ATTORNEYS' FEES AND EXPENSES
### (AGAINST ALL DEFENDANTS)

114.  Fifth Third Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

115.  The Loan Documents require the payment of all amounts for costs including attorneys' fees incurred in connection with any breach or default thereunder or incurred in order to enforce or interpret the terms or provisions of the Loan Documents.  This includes Lender's costs of collection, including court costs and statutory attorneys' fees pursuant to O.C.G.A. §13-1-11.

116.  Pursuant to O.C.G.A. §13-1-11, Defendants were given proper notice that they had ten (10) days from receipt of the notice to pay the entire principal balance outstanding on the Notes, together with all accrued and unpaid interest and late fees thereon to the date of payment by them, without the payment of such attorneys' fees.  Defendants failed to pay such outstanding amounts and Plaintiff is now entitled to recover fifteen percent of the first $500 of outstanding principal plus accrued interest and 10 percent of remaining outstanding principal and accrued interest as attorneys' fees.  O.C.G.A. §13-1-11.

117.  In addition, as described herein, Defendants have been stubborn and litigious and have caused Plaintiff unnecessary trouble and expense entitling

Plaintiff to recover its attorneys' fees and expenses actually incurred pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE,** Fifth Third demands judgment against Defendants for attorneys' fees and expenses actually incurred pursuant to O.C.G.A. § 13-6-11, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

<u>COUNT TWELVE: APPOINTMENT OF RECEIVER IN EQUITY</u>
**(AGAINST DEFENDANTS RECLEIM LLC, RECLEIM NOVA, LLC, RECLEIM LOGISTICS, LLC, RECLEIM OH, LLC, RECLEIM PA, LLC, RECLEIM SC LLC)**

118. Fifth Third incorporates and realleges all preceding paragraphs as if fully set forth herein.

119. In addition to Fifth Third's express contractual right to the appointment of a receiver at law, there are additional equitable considerations, which support the appointment of a receiver in equity to manage and operate the Collateral.  In light of the Defendants' ongoing payment default, it is clear that the Defendants do not have sufficient funds to pay the amounts due and owing under the Notes.  Accordingly, if the Collateral is not preserved, Fifth Third and all other creditors of the Defendants will be left with no adequate legal remedy to redress the harm arising from the Defendants' breach of the Loan Documents.  The

potential harm to Fifth Third, as well as other creditors, outweighs any conceivable harm to the Defendants.

120. Fifth Third offers to do equity.

121. In the event Fifth Third is not entitled to the appointment of a receiver as a legal remedy, then Fifth Third would have no adequate remedy at law.

**WHEREFORE**, Fifth Third demands judgment against the Defendants Recleim, Recleim Nova, Recleim Logistics, Recleim OH, Recleim PA and Recleim SC for the appointment of a receiver in equity, under terms substantially similar to those in the proposed order attached to the Motion for Receiver filed substantially contemporaneously herewith, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

## COUNT THIRTEEN: APPOINTMENT OF A RECEIVER AT LAW
### (AGAINST DEFENDANTS RECLEIM LLC, RECLEIM NOVA, LLC, RECLEIM LOGISTICS, LLC, RECLEIM OH, LLC, RECLEIM PA, LLC, RECLEIM SC LLC)

122. Fifth Third incorporates and realleges all preceding paragraphs as if fully set forth herein.

123. In addition to Fifth Third's right to have a receiver appointed as a matter of equity, Fifth Third has the right to the appointment of a receiver at law through its contractual rights. *Evidentiary Submission*, Ex. 1.

124. The Defendants are in default on its obligations under the Loan Documents and multiple Events of Default (as defined in the Loan Documents) exists.  Thus, Fifth Third is contractually entitled to the immediate appointment of a receiver.

**WHEREFORE**, Fifth Third demands judgment against the Defendants Recleim, Recleim Nova, Recleim Logistics, Recleim OH, Recleim PA and Recleim SC for the appointment of a receiver at law, under terms substantially similar to those in the proposed order attached to the Motion for Receiver filed substantially contemporaneously herewith, as well as such other, further, and different relief to which Fifth Third may be entitled and is just and proper in this action.

Respectfully submitted this 14th day of January, 2021.

/s/ Graham H. Stieglitz
Graham H. Stieglitz
Georgia Bar No. 682047
Valerie K. Richmond
Georgia Bar No. 142188

Attorneys for Plaintiff
FIFTH THIRD BANK,
NATIONAL ASSOCIATION,
f/k/a Fifth Third Bank

44791623 v5

46

OF COUNSEL:

BURR & FORMAN LLP
171 Seventeenth Street, N.W., Suite 1100
Atlanta, Georgia  30363
(404) 815-3000
Email:  gstieglitz@burr.com; vrichmond@burr.com